E6HMPOTC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE THE APPLICATION OF
NATALIA POTANINA FOR AN ORDER
TO TAKE DISCOVERY PURSUANT TO
28 U.S.C. SECTION 1782(a),

------------------------------X
                                        14 MC 31
                                        14 MC 57


                                        New York, N.Y.
                                        June 17, 2014
                                        10:00 a.m.

Before:

                HON. LORETTA A. PRESKA,

                                        District Judge

                    APPEARANCES

ALSTON & BIRD
     Attorneys for Petitioner
BY:  KARL GEERCKEN
     AMBER WESSELS-YEN

DEBEVOISE & PLIMPTON
     Attorneys for Respondents
BY:  STEVEN S. MICHAELS
     JOSEPH P. MOODHE
     EMILY A. JOHNSON

1    THE COURT:  With the assistance of counsel in their
2    papers and in their arguments and because of their good faith
3    in conferring with each other, we have come to the following
4    agreements which I'll state.  There are several items still in
5    dispute which I'll discuss shortly, but there are additional
6    agreements that counsel have which they will reduce to writing.
7         What counsel wanted to discuss today are the
8    following:  In the proposed protective order attached to
9    document 61, at paragraph 9 counsel agree that in the next to
10   last line the word petitioner should be changed to proponent.
11        With respect to paragraph 5H, petitioner confirms that
12   the phrase if necessary under Russian law does not envision
13   affirmative use such as in a whistle blower situation.
14        Am I correct on that, counsel?
15        MR. GEERCKEN:  That's correct, your Honor.  There is
16   not going to be a vindictive use.
17        THE COURT:  Thank you.
18        With respect to depositions, counsel agree that the
19   movant is entitled to at least one 30(b)(6) deposition.  To the
20   extent the movant wishes additional depositions, counsel will
21   confer.
22        The parties agree that respondent will produce hard
23   copy documents within 10 days of today's date and they have
24   agreed that respondents will make rolling production of
25   e-discovery to be completed within 75 days with the

1   understanding that there could be a request for a 15-day
2   extension.
3           Counsel agree that the matters set forth today and in
4   their additional written document reflect a settlement among
5   the parties.  They agree that to the extent there are
6   disagreements among them with respect to the terms and
7   conditions of the settlement, they will meet and confer.
8           We also agree that the Court will retain jurisdiction
9   of the matter in order to administer the settlement agreement.
10          The one issue that does seem to be outstanding is
11  whether or not Mr. Alieve, a vice-president of Interros, should
12  be required to produce documents and electronic discovery from
13  Interros.  Mr. Alieve also holds a high position with Altpoint,
14  which counsel characterize as Mr. Potanin's primary investment
15  vehicle.
16          Counsel also characterized Interros as an investment
17  vehicle.  Counsel have handed up document 4-2 in 14 Misc.
18  31-P1, which is a snapshot of the Interros team as of, the date
19  on the document is 1/24/2014.  The team shows Mr. Potanin,
20  Ms. Potanina's former husband as the president and owner and
21  Mr. Alieve as one of two vice-presidents.
22          Counsel have represented that Mr. Alieve is a United
23  States resident, that Interros is a Russian company, that
24  Mr. Alieve has, for some time, had, of course, access to
25  electronic information of Interros.  And although not reflected

1    in the record, counsel have represented that at some point
2    Mr. Alieve no longer had access to Interros e-mail, although he
3    has continued to hold a position as vice-president in Interros.
4            The question on the table is whether Interros e-mails
5    and other discovery should be produced in this proceeding under
6    Section 1782.
7            In response to my question of which of the <u>Intel</u>
8    factors counsel for the respondents rely on in opposing this
9    discovery, counsel suggests that the respondents are nonparties
10   to the foreign proceeding but at least Interros is in Russian.
11   As we know, however, the Second Circuit has refused to ingraft
12   a quasi exhaustion requirement onto Section 1782 that would
13   force litigants to seek information through the foreign or
14   international tribunal before requesting discovery from the
15   district court.  <u>In Re Euromepa, S.A v. R. Esmerian, Inc.</u>, 51
16   F.3d 1095, 1098 (2d Cir. 1995).
17           The suggestion here that the petitioner is required to
18   request the information directly from Mr. Potanin, the
19   controlling interest holder, or, as the document says, owner of
20   Interros, is contrary to any reasonable suggestion about
21   discovery, and this is related to the relevance point.  On that
22   point counsel argue that because the separation date has been
23   set by the Russian court and at least one level of appeal has
24   affirmed the ruling, counsel argue that discovery sought after
25   the separation date as it now stands is irrelevant.  I

1    disagree.

2            Certainly even if a subsequent appeal, which
3    petitioner intends to file, according to the record, even if a
4    subsequent appeal confirms the separation date as it now stands
5    in the Russian proceedings, the discovery that is requested
6    here may still be relevant to find out whether Mr. Potanin has
7    hidden assets, diverted assets, conveyed assets fraudulently,
8    or otherwise concealed the billions of dollars in assets that
9    the popular press, at least, suggests that he owns.

10           In the proceedings that follow, Ms. Potanina can
11   identify assets and ask the Court to determine whether those
12   assets were acquired by the spouses during the marriage or were
13   acquired using funds or assets that existed while the marriage
14   was in effect.  The Russian court may also very well consider
15   and rely on evidence relating to assets acquired after
16   separation, particularly if one party has alienated or
17   concealed the marital assets.  In so finding, I rely on the
18   declaration submitted by petitioner's Russian law expert,
19   Mr. Ryabchenko.

20           I think the discussion that just went before also
21   takes into account the nature of the foreign tribunal and the
22   proceedings there.  There does not seem to be any dispute that
23   the Russian courts are receptive to U.S. judicial assistance.
24   There is no argument that the request conceals an attempt to
25   circumvent foreign restrictions on discovery.  And although at

1    the outset of this proceeding I might have worried about
2    trimming back intrusive or burdensome requests, counsel,
3    through their diligence, have probably gone as far as they can
4    in so doing.
5             Another question raised by counsel is the request for
6    material which might well be on servers based in Russia.
7    However, counsel have cited cases that hold that once a Section
8    1782 application is found to be valid, the Court "need not
9    bother itself with Section 1782 any longer, but is to consider
10   [petitioner's] requests as it would any other discovery request
11   in a complex case."  Heraeus Kulzer (633 F.3d, 599 7th Cir.
12   2010).
13            A Section 1782 discovery request, just as any other
14   discovery request, is reasonably calculated to lead to relevant
15   matter if there is any possibility that the information sought
16   may be relevant to the subject matter of the action.  In Re
17   Gushlak, number 11-MC-218, 2011 WL 3651268 at *6 (E.D.N.Y.
18   August 17, 2011).
19            In addition, counsel have brought to my attention the
20   ruling by Judge Cathy Bissoon in Potanina, number misc. 14-50
21   [docket number 33] 2014.  There Judge Bissoon ordered the
22   production of documents from both within and outside of the
23   United States, finding that the officer of the company had
24   possession, custody, or control of those documents by reason of
25   his position within the company.

1           Similarly here, Mr. Alieve, shown to be one of two
2   vice-presidents of Interros, has possession, custody, or
3   control of the documents, both hard copy and electronic, of
4   Interros, whether here or elsewhere.  There is no showing in
5   the record of any lack of control by Mr. Alieve and,
6   accordingly, those documents are ordered to be produced within
7   the same time frame as counsel have agreed as to hard copy and
8   electronic discovery.
9           Counsel, is there anything I have forgotten?
10          MR. GEERCKEN:  Your Honor, I think you've covered it
11  all.  Thank you, for petitioner.
12          THE COURT:  Anything I have forgotten?
13          MR. MICHAELS:  Your Honor, thinking ahead for purposes
14  of whatever rights we may have under the circumstances your
15  Honor mentioned, that in other connections we have not yet
16  heard from your Honor how the Court would distinguish or reject
17  the reasoning of the other judges of this district as well as
18  the language in the Sario case from the Second Circuit, to the
19  extent that Section 1782 does not apply to so-called round trip
20  discovery.  We have heard the rest of the ruling.
21          THE COURT:  I think that the holdings of the courts,
22  to the extent that once you're through 1782 one is to treat the
23  discovery request as one would treat any other discovery
24  request in a complex case, is sufficient.
25          Counsel, when will you be submitting the remaining

1  facts of agreement constituting your settlement?

2      MR. GEERCKEN: Your Honor, we would hope to be able to
3  do that this week, but certainly within one week.

4      THE COURT: Excellent. Very well. Thank you,
5  counsel, for your assistance.

6      MR. MOODHE: Your Honor, before we adjourn, obviously,
7  we are going to discuss your Honor's ruling on the Alieve
8  Interros e-mails with our client. It may be that the client
9  will want to take an appeal. And rather than burden the Court
10 with paperwork on a motion for a stay, I would just like to
11 make that application on the record now, your Honor.

12     THE COURT: Counsel, do you wish to be heard on that?

13     MR. GEERCKEN: Yes, your Honor. We would oppose an
14 application for a stay. This is a matter that has been under
15 discussion for many months now, as we have noted in our papers
16 and has been confirmed by respondents' papers. There are
17 ongoing marital distribution, asset distribution proceedings in
18 Russia, and time is a sensitive issue for us. And we don't see
19 the need for a stay right here.

20     THE COURT: Anything else, Mr. Moodhe?

21     MR. MOODHE: No, your Honor.

22     THE COURT: The request for a stay is denied. The
23 proceedings here have been ongoing for a very long time. It
24 does seem that proceedings in Russia are moving rather quickly
25 and, accordingly, for the discovery to be of any use, as

1    contemplated by the statute, discovery should be made promptly
2    within the timetable agreed to by counsel.
3             To the extent that there is an untoward result on
4    appeal, then counsel can figure out what they have to do about
5    it.  The request for a stay is denied.
6             Thank you, counsel.  Good morning.
7                              o0o