**Debevoise & Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Mark W. Friedman
Partner
mwfriedman@debevoise.com
+1 212 909 6034

November 17, 2015

<u>VIA ECF</u>

Hon. Loretta Preska
Chief United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**In re Application of Natalia Potanina,
Nos. 14-Misc-31 and 14-Misc-57 (S.D.N.Y., consolidated Mar. 14, 2014) (Part I)**

Dear Chief Judge Preska:

  We represent Respondent Altpoint Capital Partners LLC ("Altpoint") in the above-captioned proceeding and write in response to Petitioner Natalia Potanina's ("Petitioner") correspondence dated November 12, 2015.

  Petitioner's attempt to obtain a second 30(b)(6) deposition is baseless. Altpoint has fulfilled burdensome discovery obligations, and it is time for this proceeding to conclude. Since no motion is appropriate, a pre-motion conference is unnecessary.

  Altpoint is an SEC registered investment advisor. It has no involvement in whatever proceedings Petitioner has with her former husband in Russia. Nevertheless, pursuant to the July 9, 2014 settlement agreement, Altpoint has produced over 60,000 pages of documents. These documents include, among other things, Limited Partner Reports, subscription agreements, audited financial statements, tax returns, capital call notices, presentations made to investors and SEC filings. These documents provided Petitioner with a full picture of Altpoint's business as of the production date – including about the so-called Potanin or Interros Assets that Petitioner's subpoena demanded.

  In addition to this document discovery, Altpoint made Brett Pertuz available for deposition as the 30(b)(6) company representative. Mr. Pertuz is a Managing Director of Altpoint, which makes him among its most senior employees. He earned a University of Virginia bachelor's degree and a Harvard MBA. He has been an investment management professional for the past fifteen years, the last six of them at Altpoint. He is one of only three Altpoint employees on Altpoint's investment committee, the body charged with making decisions about acquisition and disposition of investments. In short, he is highly knowledgeable about Altpoint and the various "Assets" of which Altpoint is aware. Moreover, he supplemented his personal knowledge by many hours of preparation, including reviewing company documents and speaking with colleagues. Mr. Pertuz patiently answered deposition questions for seven hours, providing detailed information about Altpoint, its investors and its investments.

Hon. Loretta Preska                         2                         November 17, 2015

      Petitioner can therefore have no legitimate objections regarding Mr. Pertuz's knowledge or preparedness with respect to the noticed topics, all of which concerned, in one way another, the nature, location or value of certain "Assets." Petitioner instead now complains about Mr. Pertuz's responses to "three key issues" that were *not* noticed topics. *See* Ex. B, Oct. 29 Ltr. at 2. For example, Petitioner complains that Mr. Pertuz was not sufficiently knowledgeable about "the structure of Altpoint," vaguely citing deposition topics 1 and 3. Nov. 12, 2015 Ltr. at 3. Topics 1 and 3 actually specified "The extent, current value, and location of Potanin Assets or Interros Assets" and "Potanin or Interros ownership . . ., equity, shares, or debt position in the Interros U.S. Companies or in any other companies or Assets." *See* Ex. 1, Subpoena Dep. Topics, Feb. 3, 2014. With respect to topics 1 and 3 as noticed, Mr. Pertuz provided abundant information. For example, he described the size of capital commitments from the Interros-related limited partners, the capital actually received by Altpoint from its limited partners, Altpoint's investments in various portfolio companies, and the two occasions on which Altpoint returned cash to its limited partners. *See, e.g.*, Ex. 6, Excerpts of Brett Pertuz Dep. Tr., Oct. 16, 2016 ("Pertuz Dep. Tr.") at 50:4-53:6; 145:16-148:4; 226:15-229:20; 144:4-22; 165:23-166:16. Altpoint has separately attached as Exhibit 7 a copy of the full version of Mr. Pertuz's deposition transcript, to enable the Court to assess the adequacy of Mr. Pertuz's testimony in-full.

      Of course, to the extent Mr. Pertuz did not "know the answer to the questions outside the scope of the matters described in the notice, then that is the examining party's problem." *Falchenberg v. New York Dep't of Ed.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008) (internal citation omitted). Nevertheless, Mr. Pertuz also answered questions regarding the "key issues" about which Petitioner now complains even though they were not noticed topics. For example, he provided substantial information about "the structure of Altpoint" when, he explained the setup of the Altpoint General Partner, the limited partners, and how they are invested in the funds. Ex. 6, Pertuz Dep. Tr. at 31:6-34:18. Mr. Pertuz also described in detail each of the funds managed by Altpoint and the portfolio companies in which those funds are invested. *See, e.g.*, *id.* at 99:6-100:9; 140:9-142:2; 142:6-20; 142:24-143:19; 148:5-156:19; 162:6-163:22; 171:6-178:12. He likewise provided information concerning "the role of Mr. Potanin and . . . Interros in evaluating and approving Altpoint's investment objectives and strategy" when, for example, he explained Altpoint's knowledge regarding Mr. Potanin's position at Interros, *see, e.g.*, *id.* at 43:3-44:14, various meetings that Altpoint representatives have had with Mr. Potanin or other Interros representatives from time to time, *Id.* at 67:2-9; 67:14-68:5; 68:22-72:24; 73:13-75:21; 80:8-24; 81:19-84:19, and the nature of Altpoint's limited partners and their ultimate relationship to Interros. *See, e.g.*, *id.* at 22:23-23:8; 31:6-32:14.

      Since Mr. Pertuz was "adequately prepared and able to address completely the vast majority of questions posed by the plaintiff's counsel," his testimony was sufficient. *See Rahman v. The Smith and Wollensky Restaurant Group Inc.*, No. 06 Civ. 6198LAKJCF, 2009 WL 773344, at *3 (S.D.N.Y. Mar. 18, 2009).

      This application is not, then, truly about Mr. Pertuz's testimony being insufficient; rather, it is yet another attempt to obtain additional testimony from Mr. Aliev, who, as explained in the letter his counsel filed yesterday, individually produced documents and sat for his own deposition. *See* Nov. 16, 2015 Letter from Michael A. Cardozo, Dkt. 180. Even prior to the

Hon. Loretta Preska                  3                  November 17, 2015

30(b)(6) deposition, Petitioner's counsel repeatedly demanded that Altpoint designate Mr. Aliev as its corporate representative, *see, e.g.*, Ex. 2, July 31, 2015 Ltr.; Ex G, Aug. 5, 2015 Ltr.; Ex. 3, Aug. 10, 2015 Ltr., although that is inappropriate. *See, e.g.*, Ex. 4, Aug. 2, 2015 Ltr.; Ex. H, Aug. 6, 2015 Ltr.; Ex. 5, Aug. 12, 2015 Ltr. Petitioner's counsel then repeatedly asked whether Mr. Aliev would know more about certain topics than Mr. Pertuz, even when Mr. Pertuz had already provided information on behalf of the company, and seemed unsatisfied when Mr. Pertuz mentioned employees other than Mr. Aliev. *See, e.g.*, Ex. 6, Pertuz Dep. Tr. at 220:5-15.

It is true that a year ago, in an effort to bring this discovery proceeding to the most efficient conclusion, Altpoint proposed to combine Mr. Aliev's personal deposition with the 30(b)(6) deposition. *See* Ex. E, Nov. 25, 2014 Ltr. At that time Mr. Aliev would have had a head start over his Altpoint colleagues in being knowledgeable about at least some of the deposition topics. However, Petitioner did not accept that proposal, and pursued only Mr. Aliev's individual testimony. When Petitioner was finally ready for the 30(b)(6) deposition, Mr. Pertuz was in a better position to prepare as a representative witness, especially given the other demands on Mr. Aliev's time and the fact that he resides in Los Angeles.

Finally, Petitioner's complaint that Altpoint has refused to produce certain documents is groundless. Altpoint long ago produced those documents. For example, Petitioner's counsel requested materials from Altpoint's May 2013 meeting with Mr. Potanin in Houston. Those documents can be found at ALT00046201-46226. Petitioner also requested the ANARAQ Exit Tracker. Altpoint produced numerous Exit Trackers to Petitioner, including ALT00049987-49999, which contains information as of June 30, 2013 on ANARAQ and other Fund II investments. Petitioner's counsel asked for audited financial statements of the Altpoint funds. Just one example of such a statement can be found in the production at ALT00042908-42927. As we have informed Petitioner's counsel, should Petitioner identify any specific documents that were referenced during the deposition and not contained within the production, we will take those requests under advisement. However, we cannot be expected to do counsel's work for them in reviewing the production.

Consequently, the Court should deny Petitioner's request for a pre-motion conference, and discovery with respect to Altpoint in this matter should be closed.

                                                 Respectfully submitted,

                                                 Mark W. Friedman
                                                Steven S. Michaels
                                                DEBEVOISE & PLIMPTON LLP
                                                919 Third Avenue
                                                New York, New York 10022
                                                Tel.: +1 212 909 6000
                                                Fax: +1 212 909 6836

Hon. Loretta Preska 4 November 17, 2015

mwfriedman@debevoise.com
ssmichaels@debevoise.com

*Attorneys for Respondent Altpoint Capital Partners LLC*

Attachments

cc: Counsel of Record (Via ECF)