# EXHIBIT 1

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| In Re the Application of NATALIA POTANINA<br>*Plaintiff*<br>v.<br>For an Order to Take Discovery<br>Pursuant to 28 U.S.C. § 1782(a)<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:    Altpoint Capital Partners LLC, 712 Fifth Avenue, 50th Floor, New York, NY 10019

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit "A"

| Place:   Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 | Date and Time: |
|---|---|

The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibits "A" and "B"

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/03/2014

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

### DEFINITIONS

1.    "Potanin" means Mr. Vladmir Potanin and any person acting or purporting to act on his behalf, as well as his present and former employees, representatives and agents.

2.    "Interros" means the Interros Company, as well as any subsidiaries, divisions, affiliates, and any person acting or purporting to act on its behalf, as well as its present and former officers, directors, employees, representatives and agents.

3.    "Interros U.S. Companies" means (a) any portion of Interros that is incorporated or headquartered in, or has any offices or locations in the United States or (b) any company that is incorporated or headquartered in, or has any offices or locations in the United States, in which Interros has, or at any point since 2007, had, more than 5% ownership, equity, shares, or debt position.  Interros U.S. Companies include, but are not limited to:

    a.  Altpoint Capital Partners LLC

    b.  AmQuip Crane Rental

    c.  ANARAQ

    d.  ByteGrid Holdings LLC

    e.  Everquest Financial Ltd.

    f.  Ford Models

    g.  Globe Energy Services LLC

    h.  IVESCO Holdings

    i.  Pyote Water Solutions

    j.   Resources Acquisition

    k.   Sanchez Resources LLC

    l.   SCA Sanchez Resources Holdings LLC

    m.  TowerCo

    n.   VAZATA

    o.   Stone Tower Capital LLC

    p.   Apollo Global Management LLC

    q.   Norilsk Nickel USA, Inc.

    r.   Stillwater Mining Company

4.    "Assets" means any tangible or intangible resource with economic value, whether current or fixed, including but not limited to cash or cash equivalents, stocks, bonds, securities, equity, ownership interests, intellectual property, receivables, real estate, prepaid expenses, equipment, or inventory.

5.    "Communications" shall refer to every manner of transmitting or receiving information, opinions and thoughts, including, but not limited to, all conversations, agreements, inquiries, or replies whether in person, by telephone, in writing, or by means of electronic transmittal devices such as correspondence, transmittal slips, facsimiles, electronic mail messages, memoranda, or notes.

6.    "Document" means any kind of physical representation or recording of communication or data, including without limitation written, typed, graphic, recorded, printed, filmed, magnetic or electronic matter in its entirety (including without limitation, electronic mail, letters, memoranda, reports, summaries, data, notes, charts, ledgers, computer printouts, or other graphic matters including any drafts thereof), including any

drafts, supplements, multiple copies or files, appendices, amendments, revisions, or exhibits thereto, in their original form, whether executed, approved, sent, received, erased, or otherwise altered, plus any photocopies thereof bearing handwritten or printed interlineations, notations, or other information not shown on the face of the original. Also included within the definition are the file folders or storage mechanisms for such information, and any other data, codes, glossaries, or instructions needed to translate or comprehend such information.

7.    "Concerning" or "regarding" means reflecting, containing, pertaining, indicating, showing, referring, relating, constituting, comprising, evidencing, recording, memorializing, describing, evaluating, considering, reviewing, reporting, demonstrating, discussing or mentioning.

8.    The term "any" includes the word "all" and "all" includes the word "any"; the terms "and" as well as "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of the Request that which might otherwise be construed to be outside the scope of the Request; the use of the singular shall be construed to include the plural and vice-versa; the use of any gender shall be construed to include the other gender; and the use of any tense of any verb shall be construed to include all other tenses of such verb.

## DEPOSITION TOPICS

1. The extent, current value, and location of Potanin Assets or Interros Assets.

2. Any changes in the extent, value, and location of Potanin Assets or Interros Assets from 2007 to the present.

3. Potanin or Interros ownership (whether legal or beneficial in nature), equity, shares, or debt position in the Interros U.S. Companies or in any other companies or Assets.

4. Any changes in Potanin's or Interros's ownership (whether legal or beneficial in nature), equity, shares, or debt position in the Interros U.S. Companies from 2007 to the present.

5. Any actions taken by Potanin from 2007 to the present to move or reduce Potanin Assets or Interros Assets.

6. Any sources of income of Potanin from 2007 to the present, including any amounts due to be paid to him.

7. Any sources of income of Interros from 2007 to the present, including any amounts due to be paid to Interros or Interros U.S. Companies.

8. Any sums or payments made to, or received from, Potanin or Interros from 2007 to the present.

9. Any transfer of property, real or personal, to or from Potanin or Interros from 2007 to the present.

10. Any business transactions from 2007 to the present involving Potanin, Interros, any Interros U.S. Company, or any other company in which Potanin has had an interest (whether legal or beneficial) since 2007.

11. Any debts or credits due from, or owing to, Potanin or Interros from 2007 to the present.

12. Any real, personal, tangible, and intangible property interests held by Potanin or Interros from 2007 to the present.

13. Any Assets (including but not limited to share certificates or brokerage accounts) held in the name of (or for the benefit of) any Potanin family member, including Vassily Potanin, Ivan Potanin, and Natalia Potanina from 2007 to the present.

# EXHIBIT 2

# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-922-3994
www.alston.com

Karl Geercken                      Direct Dial: 212-210-9471                      Email: karl.geercken@alston.com

July 31, 2015

**VIA EMAIL**

Mark W. Friedman
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

      Re:    *In re* Potanina, Nos. 14-MC-31 and 14-MC-57 (S.D.N.Y. filed February 3,
              2014, consolidated March 13, 2014)

Dear Mark:

      I write in response to your letter dated July 27, 2015.  Based on your firm's express representations over the many months that we have discussed the deposition of Altpoint Capital Partners LLC ("Altpoint"), we understood that Guerman Aliev would serve as the corporate representative of Altpoint.  Given this history and the extensive preparations for the August 5, 2015 deposition that have been made in reliance on your firm's representations, your attempt to substitute another Alpoint employee for Aliev just over a week before the deposition is entirely inappropriate.

      Accordingly, if Altpoint refuses to produce Aliev at the upcoming deposition, we plan to issue a separate deposition notice for Aliev in his individual capacity, in addition to taking the deposition of Brett Pertuz.  This prospect is wasteful and will result in needless delay. Indeed, it is hard to believe that anyone could have more knowledge on the noticed topics than Aliev, especially as they relate to Mr. Potanin.  As such, Altpoint must produce Aliev as promised.

      I am available this week should you wish to discuss this matter further.

Very truly yours,

Karl Geercken

cc:    Michael A. Cardozo, Esq.
       Margaret A. Dale, Esq.
       Amber Wessels-Yen, Esq.
       Alexander S. Lorenzo, Esq.

Page 2

# EXHIBIT 3

# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-922-3931
www.alston.com

Karl Geercken                     Direct Dial: 212-210-9471                     Email: karl.geercken@alston.com

August 10, 2015

VIA EMAIL

Mark W. Friedman                          Michael A. Cardozo
Joseph P. Moodhe                          Margaret A. Dale
Debevoise & Plimpton LLP                  Proskauer Rose LLP
919 Third Avenue                          Eleven Times Square
New York, NY 10022                        New York, NY 10036

Re:   *In re Application of Natalia Potanina*, Nos. 14-mc-31 and 14-mc-57
      (S.D.N.Y., consolidated March 14, 2014) (Part I)

Dear Counsel:

      As counsel for Petitioner Natalia Potanina, we write in response to your firms' coordinated August 6, 2015 letters to the Court on behalf of your respective clients, Altpoint Capital Partners, LLC ("Altpoint") [dkt. no. 174], and Altpoint's Chairman, CEO and majority owner, Guerman Aliev ("Aliev") [dkt. no. 173]. We have no interest in engaging in needless posturing, and thus write only to address the merits of Alpoint and Aliev's position.

      The false premise underlying both letters is that the identity of Altpoint's corporate representative is immaterial to Petitioner's preparations and the ultimate success of the deposition. *See, e.g., Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 162 F.R.D. 276, 277 (S.D.N.Y. 1995), *aff'd*, 128 F.3d 99 (2d Cir. 1997) (recognizing that the last-minute substitution of a witness originally designated as a party's 30(b)(6) representative with a less knowledgeable witness is improper). This position sufferers from several fatal defects. First, in November of last year, you expressly represented that "Mr. Aliev, as the Chairman and CEO of Altpoint, *is the individual most likely to be able to provide* by way of oral testimony information responsive to the subjects listed in the 30(b)(6) subpoena." *See* Exhibit A to Petitioner's August 5, 2015 letter to the Court [dkt. no. 172] (emphasis added). This position makes sense as Aliev, by virtue of his previous and current positions at Altpoint and Interros, and his relationship with Petitioner's former husband, is uniquely situated to testify regarding the thirteen noticed topics. These thirteen topics all relate to the relationship, both direct and indirect between, on the one side, Altpoint and, on the other side, Petitioner's former husband and/or his holding company, Interros. Moreover, your representation necessarily means that Pertuz or anyone else at Altpoint, by definition, *is not* the individual most likely to be able to provide relevant testimony on the noticed topics.

August 10, 2015
Page 2

As such, the need for a separate deposition of Aliev, if Alpoint does not designate him as its corporate representative, does not stem from a desire by Petitioner to seek additional individual discovery from Aliev.  It is based on the fact that, as you have conceded, Aliev is the individual most likely to be able to provide information responsive to the thirteen noticed topics.

Second, you have not identified any communication prior to Debevoise's July 27, 2015 letter that states or even suggests that your November 2014 representation was withdrawn and that, as a result, Aliev would no longer be Altpoint's corporate representative.  In the absence of any such communication, and as reflected in Petitioner's July 23, 2015 letter to the Court [dkt. no. 171], Petitioner had no reasons to question that, as previously represented, Altpoint was designating Aliev as its corporate representative.

Third, Petitioner's decision to resolve all issues related to Aliev's production of documents prior to Altpoint's 30(b)(6) deposition was entirely reasonable, especially where you had represented that Aliev would be Altpoint's corporate representative.  As such, it is logical that Altpoint's 30(b)(6) deposition would be scheduled to occur after the hearing on the scope of Aliev's production.

The remainder of the arguments and assertions in the letters do not merit a response other than to note that, given all that has transpired in this action, including, most recently, Altpoint's switch of its corporate representative just days before its deposition, it is disingenuous to claim that it is Petitioner who is intentionally delaying discovery.  Accordingly, we reiterate our request that Altpoint make Aliev available at its 30(b)(6) deposition.  As we have stated in our communications following Debevoise's July 27 letter, Petitioner's position is that the most efficient path forward is for Altpoint to honor its representation that Aliev would be its corporate representative.  As indicated to the Court, should Altpoint fail to do so, we will proceed to depose Pertuz and seek the deposition of Aliev.

We are available this week to discuss.

Very truly yours,

Karl Geercken

cc:    Amber Wessels-Yen, Esq.
       Alexander S. Lorenzo, Esq.

# EXHIBIT 4



Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 2, 2015

<u>**VIA EMAIL**</u>

Karl Geercken, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
karl.geercken@alston.com

*In re* **Potanina, Nos. 14-MC-31 and 14-MC-57 (S.D.N.Y. filed Feb. 3,
2014, consolidated Mar. 13, 2014)**

Dear Karl:

We were surprised to receive your latest letter on Friday evening, July 31, 2015, in which it appears that Petitioner is attempting to designate Altpoint Capital Partners, LLC's 30(b)(6) representative witness for the upcoming 30(b)(6) deposition. As Petitioner is not permitted to make Altpoint's designation, we write to inquire whether you will proceed with the deposition of the corporate representative Altpoint has designated.

As you are aware, a company has the right to designate a representative of its choosing to serve as its 30(b)(6) witness. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ."). The individual noticing the deposition is not entitled to make that designation for a corporate deponent or to otherwise to compel a company to produce a specific individual as its representative. *See M.P.D. Accessories, B.V. v. Urban Outfitters, Inc.*, No. 12 Civ. 6501(LTS)(KNF), 2013 WL 4399199, at *12 (S.D.N.Y. Aug. 13, 2013) (refusing to compel a company to produce a specific individual as its corporate representative and noting "defendants do not point to any binding authority permitting the court to compel a corporation deponent to designate a specific person to be its Rule 30(b)(6) witness, and the Court finds none").

In your letter, you allege that Debevoise has made "express representations" from which you "understood that Guerman Aliev would serve as the corporate representative of Altpoint." This allegation is inaccurate. We have made no such representation about the identity of the 30(b)(6) designee. We invite you to inform us what "express representations" your letter refers to.

Moreover, Petitioner can have no serious objection to Altpoint's designation. By its very nature, a 30(b)(6) deposition seeks not individual

Karl Geercken, Esq.                              2                        August 2, 2015

knowledge, but knowledge possessed by the company.  Brett Pertuz is
unquestionably a suitable company representative for this deposition.  He is a
Managing Director of Altpoint Capital Partners, LLC.  He is knowledgeable about
Altpoint's business, and he has taken time to prepare himself to address questions
regarding each of the 13 topics Petitioner has identified.  Additionally, he is
someone Petitioner has herself previously identified when she served notice of an
individual deposition on him as well as on Mr. Aliev.

        We do not accept your letter's contention that Altpoint's designation of
Mr. Pertuz is somehow inappropriate because you undertook "extensive
preparations" for the 30(b)(6) deposition believing that Mr. Aliev would serve as
the representative.  Petitioner identified the topics for this deposition over sixteen
months ago in its subpoena dated February 2014, and Petitioner has had a
substantial majority of Altpoint's document production for over 9
months.  Petitioner has therefore had ample time to formulate any questions it has
for the company related to those topics, and the individual providing the
information on the company's behalf has no bearing on the substance of company
knowledge.  If, in any event, you need additional time to prepare, we are amenable
to discussing a short adjournment.

        Moreover, taking this 30(b)(6) deposition will not deprive Petitioner of
whatever right she may have to take further evidence from Mr. Aliev in his
individual capacity.  Petitioner has already noticed Mr. Aliev's individual
deposition and has, of course, already taken extensive evidence of Mr. Aliev about
matters personal to him.  It remains to be seen whether there is any legitimate
basis for taking further evidence from Mr. Aliev in his personal capacity or from
any of the other individuals on whom Petitioner has served deposition
notices.  Nonetheless, it would be prudent to revisit this topic after the 30(b)(6)
deposition has been taken.

        Accordingly, we confirm that Mr. Pertuz will be available to serve as
Altpoint's 30(b)(6) representative on the agreed-upon date of August 5, 2015.  If
for any reason you are not prepared to go forward with the deposition as agreed,
please let us know how you wish to proceed.

                                        Very truly yours,

                                        /s/ Mark W. Friedman

                                        Mark W. Friedman

cc:     Amber Wessels-Yen, Esq.
        Alexander Lorenzo, Esq.
        Matthew Decker, Esq.
        Michael A. Cardozo, Esq.

Karl Geercken, Esq.                    3                    August 2, 2015


Margaret A. Dale, Esq.

# EXHIBIT 5

**Debevoise
& Plimpton**

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

**Mark W. Friedman**
Partner
mwfriedman@debevoise.com
+1 212 909 6034

August 12, 2015

<u>VIA EMAIL</u>

Karl Geercken, Esq.
Alston & Bird LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387

**In re Potanina, Nos. 14-MC-31 and 14-MC-57 (S.D.N.Y. filed Feb. 3, 2014,
consolidated Mar. 13, 2014)**

Dear Karl:

We write in response to Petitioner's letter dated August 10, 2015 to once
again make plain that Altpoint Capital Partners, LLC has designated Mr. Brett Pertuz
as its 30(b)(6) representative, and that there is simply no purpose in exchanging
further correspondence on this topic. To that end, Mr. Pertuz is available to testify
on September 23, 2015.

Moreover, we again note that it should make no difference to Petitioner
who the company has designated as its 30(b)(6) witness, provided that that person is
qualified to serve as the company representative. As you know, a deposition taken
pursuant to Rule 30(b)(6) is a deposition of a company, not any particular individual
at the company. The topics for the deposition of Altpoint have been in place for 18
months; anyone from Altpoint who studied those topics and prepared him or herself
to testify about them would be a suitable 30(b)(6) witness. Whether a particular
employee started from a place of more or less information than another is, ultimately,
irrelevant—what matters is that the chosen representative takes the time to prepare to
answer questions on the company's behalf. Similarly, the questions Petitioner wishes
to ask of Altpoint should not differ based on the identity of the representative
providing the company's knowledge. If the questions do change based on the
representative, that can only be because they are seeking individual, not company,
knowledge.

Petitioner has of course made no allegation that Mr. Pertuz is not a suitable
company representative, nor could she. Mr. Pertuz is a Managing Director, a senior
company officer, and he has devoted considerable time to informing himself of facts

Karl Geercken, Esq.                         2                    August 12, 2015

pertinent to each of the 13 topics noticed by Petitioner.  The case cited in your letter, *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 162 F.R.D. 276, 277 (S.D.N.Y. 1995), *aff'd*, 128 F.3d 99 (2d Cir. 1997), is inapt.  It concerns a company president who engaged in repeated and systematic deceptions to evade ever testifying at all, one of which deceptions involved proposing his own son as a 30(b)(6) witness, although the son admittedly knew little about the relevant facts.  That is simply not comparable to the facts here, where Mr. Pertuz is clearly qualified, and where Mr. Guerman Aliev has already submitted to seven hours of questioning in both a deposition and a hearing.  In any event, *Fonar* certainly does not stand for the proposition for which you have cited it, namely "that the identity of Altpoint's corporate representative is [ ]material to Petitioner's preparations and the ultimate success of the deposition."  Petitioner has notably not contested the indisputable rule that the company is permitted to designate its own witness, which is exactly what Altpoint has done in this case.

Furthermore, Petitioner cannot and will not change Altpoint's designation by continuing to mischaracterize Altpoint's November 2014 proposal.  That proposal was made solely to expedite discovery for the benefit of all parties.  In that context, Mr. Aliev would have taken the time necessary to prepare as the company representative, along with preparing to testify about matters within his personal knowledge.  Given his background and the available time to prepare, Mr. Aliev might well have been the person who, at that time, was most likely to have knowledge regarding the 30(b)(6) topics.  However, Petitioner did not accept the November offer, and instead used valuable time taking seemingly meaningless individual testimony of Mr. Aliev.  The circumstances, therefore, are much different now than they were in November 2014.  Mr. Aliev has already devoted substantial time and energy to this matter, in which he and Altpoint are merely third party witnesses called upon to give evidence for a Russian case in which they are not parties.  In light of this, Mr. Aliev's counsel has already made clear that he may oppose any further individual testimony.  Since preparing to testify as a company representative is itself time consuming and burdensome, precisely because it entails learning information that was not already within an individual's personal knowledge, it is perfectly reasonable for Altpoint to have designated Mr. Pertuz, rather than Mr. Aliev, as its company representative.

Accordingly, please let us know as soon as possible, and preferably by Friday, August 14, if you are available on September 23, 2015 for the 30(b)(6) deposition.

Very truly yours,

Mark W. Friedman

Karl Geercken, Esq.                    3                    August 12, 2015


cc:    Amber Wessels-Yen, Esq.
       Alexander Lorenzo, Esq.
       Michael A. Cardozo, Esq.
       Margaret A. Dale, Esq.

# EXHIBIT 6

## (Redacted In Its Entirety)

# EXHIBIT 7

## (Redacted In Its Entirety)